| | |
|---|---|
| 1 | Imran F. Vakil, Esq. (Bar No. 248859) |
| |    ivakil@nexiolaw.com |
| 2 | **NEXIO, PC** |
| | 245 Fischer Avenue |
| 3 | Suite C3 |
| | Costa Mesa, CA 92626 |
| 4 | Phone:    (949) 478-6830 |
| | Facsimile: (949) 478-1275 |
| 5 | *Attorneys for Plaintiffs, Sream, Inc.* |
| 6 | *and RooR International BV* |

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SREAM, INC, a California corporation; and ROOR INTERNATIONAL BV, a Foreign Corporation<br><br>    Plaintiffs,<br><br>v.<br><br>KASHMIR KHINDA; RAJWINDER KHINDA; and DOES 1-10 INCLUSIVE,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. § 1114]**<br>**(2) COUNTERFEITING [15 U.S.C. § 1117]**<br>**(3) FALSE DESIGNATION OF ORIGIN [15 U.S.C. §1125(a)]**<br>**(4) UNFAIR COMPETITION [CAL. BUS. & PROF. CODE § 17200]**<br>**(5) COMMON LAW UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Sream, Inc. ("**Sream**") and RooR International BV ("**RIBV**") (Sream and RIBV are collectively "**Plaintiffs**"), by and through its attorneys of record, complains against Defendants Kashmir Khinda and Rajwinder Khinda (collectively "**Khinda**" or the "**Khindas**") and DOES 1 through 10 ("**DOES**") (Khinda and DOES are collectively "**Defendants**"), alleging as follows:

## JURISDICTION AND VENUE

1. This is a civil action against Defendants for counterfeiting, trademark infringement, false designation of origin and unfair competition under the Lanham Act (15 U.S.C. §§ 1051 *et seq.*).

2. This court has subject matter jurisdiction under the Lanham Act, 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (trademark) and 28 U.S.C. § 1338(b) (unfair competition), and pendant jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) in that the claim arises in this Judicial District, the Defendants may be found and transact business in this Judicial District, and/or the injury suffered by Plaintiffs took place in this Judicial District. Defendants are subject to the general and specific personal jurisdiction of this Court because of their contacts with the State of California.

4. This Court has personal jurisdiction over Defendants. Amongst other things, Defendants have engaged in direct, contributory, vicarious, and/or otherwise induced trademark infringement and counterfeiting in this judicial district. Further, Defendants have engaged in continuous and systematic business in California and, upon information and belief, derive substantial revenues from commercial activities in California. Specifically, Defendants have (1) designed, manufactured, sourced, imported, offered for sale, sold, distributed, and/or shipped infringing and counterfeit merchandise to persons within this State in the ordinary course of trade; (2) engaged in acts or omissions outside of this state causing injury within the State; and/or (3) have otherwise made or established contacts with this State sufficient to permit exercise of personal jurisdiction.

# PARTIES

5. Plaintiff Sream is a corporation incorporated and existing under the laws of California, with its principle place of business located at 12869 Temescal Canyon Road, Suite A, Corona, California 92883. Sream does business as "RooR USA".

6. Plaintiff RIBV is a Foreign corporation that is incorporated in the Netherlands and has its principal place of business at Sint Nicolaasstraat 19, 1012 NJ, Amsterdam. RIBV is the registered owner of the "RooR" trademark.

7. Defendant Kashmir Khinda is an individual.

8. Defendant Rajwinder Khinda is an individual.

9. The Khindas do business as "Cigarettes and Cigar Smoke." The Khindas operate a retail smoke shop located at 5161 Madison Avenue, Sacramento, CA 95841 (as further identified in Sacramento record no. FBNF2012-06394 and FBNF2017-03747, general license no. 32002-05481, and tobacco license no. TRB12006-50164). On information and belief, and as described *infra,* Khinda is engaged in the unlawful importation, manufacture, retail sale and/or wholesale sales of counterfeit RooR branded water pipes and related parts. The full scope of Khinda's conduct is under investigation, including without limitation, how many *other* retail smoke shop(s), distribution companies, and/or manufacturing companies Khinda owns and/or operates that engaged in the conduct complained of.

10. DOES 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sues said Defendants by such fictitious names. Plaintiffs will ask leave of Court to amend this Complaint and insert the true names and capacities of said Defendants when the same have been ascertained. Plaintiffs are informed and believe and, upon such, alleges that each of the Defendants designated here as a "DOE" is legally responsible in some manner for the events and happenings herein alleged, and that Plaintiffs' damages as alleged herein were proximately caused by such Defendants.

///

///

## FACTS COMMON TO ALL COUNTS

<u>The History of the RooR Brand</u>

11.  Martin Birzle is an award-winning designer and manufacturer of smoker's products. Based in Germany, since 1995, Mr. Birzle marketed and sold products using the trademark "RooR." The RooR branded products, such as borosilicate jointed-glass water pipes, parts, and accessories related thereto, are widely recognized internationally and are highly renowned for their ornate and innovative characteristics. Indeed, the RooR brand is one of the leading companies in the industry, and has garnered numerous awards and recognition for its innovative products and designs.

12.  For nearly two decades, Mr. Birzle worked to distinguish the RooR brand as the premier manufacturer of glass water pipes by emphasizing the brand's unwavering use of quality materials and focusing on scientific principles which facilitate a superior smoking experience. RooR branded products embody a painstaking attention to detail, which is evident in many facets of authentic RooR branded products. It is precisely because of the unyielding quest for quality and unsurpassed innovation that RooR branded products have a significant following and appreciation amongst consumers in the United States and internationally.

13.  As a result of the continuous and extensive use of the trademark "RooR," Mr. Birzle was granted valid and subsisting federal statutory and common law rights to the RooR trademark. Mr. Birzle then assigned to RIBV all the rights associated with the RooR trademark, retroactively. The retroactive assignment to RIBV was duly recorded with the United States Patent and Trademark Office on January 10, 2018. A copy of the assignment recordation is attached hereto as **Exhibit "A."**

14.  RIBV is the owner of United States trademarks which are registered on the Principal Register and have become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065. The following is a list of RIBV's federally registered and common law trademarks:

    a.  U.S. Trademark Registration Number 3,675,839 for the word mark

"RooR" and its logo in association with goods further identified in registration in international class 034.

b.   U.S. Trademark Registration Number 2,307,176 for the word mark "RooR" and its logo identified below in association with goods further identified in the registration in international classes 025 and 034.

c.   U.S. Trademark and Registration Number 2,235,638 for the word mark "RooR" and its logo identified below in association with goods further identified in the registration in international class 021.

d.   Common law and unregistered state law rights in the following variants of the RooR marks:



(collectively the "**RooR Marks**").  A copy of the USPTO registrations is attached hereto as **Exhibit "B."**

The RooR Brand in the United States

15.   Sream is a California corporation that has manufactured glass products and various smokers' articles, including water pipes, for nearly a decade. Additionally, since 2013, Sream has been the exclusive licensee for the RooR Marks within the United States.

16.   Pursuant to a licensing agreement between Sream and Mr. Birzle (hereinafter the "License Agreement"), Sream has used the RooR Marks in commerce throughout the United States continuously since 2013, in connection with the manufacturing of smokers' products. RIBV, as the current owner of the RooR Marks, ratified the License Agreement under the same terms and conditions on March 7, 2018.

17.   Under the License Agreement, Sream also advertises, markets, and distributes

water pipes, parts, and accessories related thereto and other smokers' articles in association with the RooR Marks. All of these activities are conducted in accordance with the highest standards and policies maintained by RIBV to control the quality of the RooR Brand.

18. Also pursuant to the License Agreement, Sream has been granted all rights to sue to obtain damages and injunctive relief for past and future infringement of the RooR Marks in the United States (hereinafter the "Enforcement Rights"). The License Agreement provides that the Enforcement Rights granted to Sream under the License Agreement are tantamount to those of an assignee, as contemplated by trademark law. The License Agreement also appoints Sream as the trademark owner's legal representative to police and enforce all rights in the RooR Marks within the United States.

19. The RooR Marks are distinctive to both the consuming public and the Plaintiffs' trade. Sream's RooR branded products are made from superior materials – glass that is nearly unbreakable – and are hand-blown by individual artists. RIBV has maintained, and demanded of Sream, the same standards that made RooR a recognizable high-quality brand. The superiority of RooR branded products is not only readily apparent to consumers, who yearn for the RooR brand's higher quality glass in the marketplace, but to industry professionals as well. The unique style and functional superiority of the RooR brand has earned it accolades in leading trade magazines and online publications and has made the RooR Marks synonymous with high quality products.

20. Since 2013, Sream has worked in conjunction with Mr. Birzle and now RIBV to build significant goodwill in the RooR brand in the United States. Together, the Plaintiffs have spent substantial time, money, and effort in developing consumer recognition and awareness of the RooR brand via point of purchase materials and displays, through their websites, by attending industry trade shows, and through social media promotion. A wide array of websites, magazines, and specialty shops include advertising of RooR branded products, which are immediately identifiable.

21. Sream sells its products under the RooR Marks to its authorized distributors in the United States, including in California. Sream has over a thousand authorized

6
COMPLAINT

distributors nationwide which include retail stores specializing in smoker's products. As such, RooR branded products reach a vast array of consumers ranging from the most sophisticated tobacco connoisseurs to novice smokers.

22. It is because of the recognized quality and innovation associated with the RooR Marks that consumers are willing to pay higher prices for genuine RooR branded products. For example, a RooR brand 45 cm water pipe retails for $300 or more, while a non-RooR branded product of equivalent size will usually sell for less than $100. Demand for authentic RooR products is strong. Indeed, sales of products bearing the RooR Marks in the United States have been in excess of five million dollars for the last three years.

23. It is exactly because of their higher sales value that RooR branded products are targeted by counterfeiters. These unscrupulous people and entities tarnish the RooR brand by unlawfully selling water pipes that have identical, or nearly identical, versions of the RooR Marks affixed to products that are made with inferior materials and technology. Thereby leading to significant illegitimate profits by store owners, such as Khinda. In essence, Khinda misleads consumers by selling them low grade products that free ride on the goodwill of the RooR brand, and in turn, Khinda reaps substantial ill-gotten profits. Khinda's conduct contributes to the complete flooding of the marketplace with counterfeit products, which results in lost sales and damages to the Plaintiffs and irreparable harm to the RooR brand's image.

24. Unfortunately, the current U.S. marketplace is saturated with counterfeit products – like those Khinda has sold. As such, the Plaintiffs have been forced to scrupulously enforce their rights in order to protect the RooR Marks against infringement. By exercising its Enforcement Rights, Sream, with the cooperation of RIBV, has proactively and successfully policed the unauthorized use of the RooR Marks and/or counterfeit RooR branded products nationwide. The Plaintiffs have had to bear great expense to seek out and investigate suspected counterfeiters in their attempt to clean up the marketplace. In many instances, the Plaintiffs have had to seek redress from the courts in order to effectuate to enforce their rights in the RooR Marks.

## DEFENDANTS' UNLAWFUL ACTIVITIES

25.  Khinda has, without consent of the Plaintiffs, offered to sell and sold within the United States (including within this judicial district) water pipes that were neither made by the Plaintiffs nor by a manufacturer authorized by the Plaintiffs (hereinafter the "Counterfeit Good(s)"). Nevertheless, Khinda sold in commerce Counterfeit Goods using reproductions, counterfeits, copies and/or colorable imitations of one or more of the RooR Marks (hereinafter the "Infringing Mark").

26.  In the ongoing investigation into the sales of counterfeit products bearing the RooR Marks, on 12/9/2015, Plaintiffs' investigator purchased a glass water pipe with a RooR Mark affixed to it, from Khinda, for a cost of $100.00, charged to the account of the Plaintiffs' investigator.

27.  Upon receipt, images and/or the physical unit of the product purchased from Khinda were inspected by the Plaintiffs' agent to determine its authenticity. The inspection of the purchased item confirmed that the water pipe Khinda sold to the Plaintiffs' investigator was a Counterfeit Good with an Infringing Mark affixed to it. A true and correct copy of the Counterfeit Good bearing the Infringing Mark purchased from Khinda and its corresponding purchase receipt is attached hereto as **Exhibit "C."**

28.  Khinda's use of the RooR Marks includes importing, advertising, displaying, distributing, selling, and/or offering for sale unauthorized copies of RooR branded products. Khinda's offering to sell, selling, importing and encouraging others to import Counterfeit Goods bearing the Infringing Mark in this manner was and is likely to cause confusion or to cause mistake and/or deceive consumers who purchase the Counterfeit Goods.

29.  Khinda's use of the Infringing Mark began long after Mr. Birzle obtained the trademark registrations alleged above, and after Sream's license and subsequent adoption and use of the RooR Marks. Neither Plaintiffs nor any authorized agents have consented to Khinda's use of the RooR Marks, or any use of reproductions, counterfeits, copies and/or colorable imitations thereof.

30. Khinda used images and names identical to or confusingly similar to the RooR Marks, to confuse customers and aid in the promotion and sales of Counterfeit Goods under the Infringing Mark.

31. The Infringing Mark affixed to the Counterfeit Goods that Khinda has manufactured, distributed, provided, marketed, advertised, promoted, offered for sale, and/or sold, is confusingly identical or similar to the RooR Marks that Sream affixes to its water pipes.

32. The water pipes Khinda sells and offers for sale under the Infringing Mark are made of substantially inferior materials and inferior technology as compared to genuine RooR brand products.

33. Khinda has manufactured, distributed, provided, marketed, advertised, promoted, offered for sale, and sold its water pipes under the Infringing Mark through its retail convenience store.

34. Upon information and belief, Khinda has marketed, advertised, and promoted its Counterfeit Goods under the Infringing Mark through point of purchase displays, and/or its website, and/or via social media promotion.

35. Upon information and belief, Khinda offers for sale and sells Counterfeit Goods under the Infringing Mark to a vast array of consumers ranging from the most sophisticated tobacco connoisseurs to novice smokers.

36. Khinda's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Counterfeit Goods sold by Khinda, and are likely to deceive, and have deceived, the relevant consuming public into mistakenly believing that the Counterfeit Goods sold by Khinda originate from, are associated or affiliated with, or otherwise authorized by Sream and/or RIBV.

37. Khinda's acts are willful with the deliberate intent to trade on the goodwill of the RooR Marks, cause confusion and deception in the marketplace, and divert potential sales of Sream's water pipes to Khinda. At a minimum, Khinda was intentionally blind to

the likelihood of confusion.

38. Khinda's acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to the Plaintiffs, the RooR Marks, and to its valuable reputation and goodwill with the consuming public for which the Plaintiffs have no adequate remedy at law.

39. As a proximate result of the unfair advantage accruing to Khinda's business from deceptively trading on the Plaintiffs' advertising, sales, and consumer recognition, Khinda has made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

40. The injuries and damages sustained by the Plaintiffs have been directly and proximately caused by Khinda's wrongful advertisement, promotion, distribution, sale and offers for sale of their goods bearing infringements or counterfeits of the RooR Marks.

41. Khinda's sale of Counterfeit Goods under the Infringing Mark has resulted in lost business opportunities, customers, contracts, and sales to the Plaintiffs.

42. Through such business activities, Khinda purposefully derived direct benefits from its interstate commerce activities by targeting foreseeable purchasers in the State of California, and in doing so, have knowingly harmed the Plaintiffs.

43. By its wrongful conduct, Khinda has traded upon and diminished the goodwill of the RooR Marks. Furthermore, the sale and distribution of Counterfeit Goods by Khinda has infringed upon the above-identified federally registered trademarks.

44. The spurious marks or designations used by Khinda in interstate commerce are identical with, or substantially indistinguishable from, the RooR Marks on goods covered by the RooR Marks. Such use therefore creates a false affiliation between Khinda and the Plaintiffs, and the RooR Marks.

45. Due to the actions of Khinda, the Plaintiffs have been forced to retain the undersigned counsel, and Khinda is responsible for paying its reasonable costs and attorney's fees.

46. Khinda's acts have damaged, and will continue to damage the Plaintiffs, and

the Plaintiffs have no adequate remedy at law.

47. Khinda's wrongful acts will continue unless enjoined by the Court. Accordingly, Khinda must be restrained and enjoined from any further counterfeiting or infringement of the RooR Marks.

## FIRST CAUSE OF ACTION
### (Trademark Infringement, 15 U.S.C. §§ 1114)

48. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 47.

49. RIBV is the owner of the federally registered RooR Marks, as set forth in more detail in the foregoing paragraphs. Mr. Birzle, as prior owner of the RooR Marks, granted to Sream an exclusive license to use the RooR Marks in the United States, including the Enforcement Rights to obtain injunctive and monetary relief for past and future infringement of the RooR Marks. RIBV ratified Sream's License Agreement after acquiring the RooR Marks from Mr. Birzle.

50. The RooR Marks are valid, protectable and distinctive trademarks that RooR continuously used to promote its goods for more than two decades, of which Sream has participated in since at least 2013. Plaintiffs are informed and believe and thereon allege that a substantial segment of the relevant purchasing public recognizes the RooR Marks as originating from and/or approved by RooR and/or its exclusive U.S. licensee, Sream.

51. Defendants, without authorization from the Plaintiffs, have used spurious designations that are identical with, or substantially indistinguishable from, the RooR Marks on goods covered by the registrations for the RooR Marks. As alleged herein and as per Exhibit "C," the water pipe sold by Khinda was not a genuine RooR product, but was sold under a substantially similar mark.

52. Defendants' unauthorized use of the RooR Marks on and in connection with Khinda's sale, offers for sale, distribution, promotion and advertisement of water pipes through its retail store constitutes Defendants' use of the RooR Marks in commerce.

53. Upon information and belief, Defendants used the RooR Marks, knowing of the Plaintiffs' rights to the RooR Marks in the United States, in connection with Khinda's

advertisement, promotion, sale, offering for sale and distribution of water pipes.

54. Defendants' activities create the false and misleading impression that Khinda is sanctioned, assigned, or authorized by Sream and/or RIBV to use the RooR Marks to advertise, manufacture, distribute, offer for sale or sell water pipes bearing the RooR Marks when Khinda is not so authorized.

55. Upon information and belief, Defendants engaged in the aforementioned activity with the intent to confuse and deceive the public into believing that Khinda and the water pipes it sells are in some way originated with, sponsored by, affiliated or associated with the Plaintiffs, when in fact it is not.

56. Defendants' use of one or more of the RooR Marks was without the consent of the Plaintiffs, and is likely to cause confusion or mistake in the minds of the public and, in particular, tends to, and does, falsely create the impression that the water pipes advertised, promoted, distributed, offered for sale, or sold by Khinda originated with, are authorized, sponsored or approved by Sream and/or RIBV when, in fact, it is not.

57. Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of the Plaintiffs' prior rights in the RooR Marks and with the willful intent to cause confusion and trade on the goodwill of the Plaintiffs and the RooR Marks.

58. Defendants' unauthorized use of the RooR Marks as set forth above is likely to: (a) cause confusion, mistake and deception; (b) cause the public to believe that the water pipe sold by Khinda is the same as Plaintiffs' water pipes or that the water pipes sold by Khinda are authorized, sponsored, or approved by Sream and/or RIBV, or that Khinda is affiliated, connected, or associated with or in some way related to Sream and/or RIBV; and (c) result in Khinda unfairly benefiting from the Plaintiffs' advertising and promotion, and profiting from the reputation of the Plaintiffs and the RooR Marks, all to the substantial and irreparable injury of the public, the Plaintiffs and the RooR Marks and the substantial goodwill represented thereby.

59. Defendants' acts constitute willful trademark infringement in violation of

Section 32 of the Lanham Act, 15 U.S.C. § 1114.

60. The sale of counterfeit products by Defendants have resulted in lost profits to the Plaintiffs, caused considerable damage to the goodwill of the Plaintiffs and the RooR Marks, and diminished the brand recognition of the RooR Marks by introducing counterfeit products into the marketplace.

61. By reason of the foregoing, the Plaintiffs are entitled to injunctive relief prohibiting Defendants from using the RooR Marks or any marks identical and/or confusingly similar thereto for any purpose, pursuant to 15 U.S.C. § 1116.  Moreover, Plaintiffs are entitled to all damages, including attorneys' fees that the Plaintiffs have sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Khinda as a result thereof, in an amount not yet known, as well as the costs of this action and attorneys' fees pursuant to 15 U.S.C. § 1117(a), treble damages pursuant to 15 U.S.C. § 1117(b). In addition, pursuant to 15 U.S.C. § 1118, Plaintiffs are entitled to an order requiring destruction of all infringing materials in each Defendant's possession. Notwithstanding the foregoing, Plaintiffs reserve the right to elect, at any time before final judgment is entered in this case, an award of statutory damages pursuant to 15 U.S.C. § 1117(c).

## SECOND CAUSE OF ACTION

### (Trademark Counterfeiting, 15 U.S.C. §§ 1116)

62. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 61.

63. Counterfeiting has been recognized as a serious issue resulting in tremendous losses to American businesses. To combat counterfeits, Congress passed the "Anti-counterfeiting Consumer Protection Act of 1966" (ACPA).

64. Defendants' actions also constitute the use by Defendants of one or more "counterfeit mark" as defined in 15 U.S.C. §1116(d)(1)(B).

65. Each of the Defendants' unauthorized use of the RooR Marks on counterfeit products that they have distributed has caused and is causing consumer confusion about the source and sponsorship of these Counterfeit Good(s).

66. Each of the Defendants' sales of these counterfeit products has caused considerable damage to the goodwill of Plaintiffs and diminished the brand recognition of the RooR Marks.

67. The sales of these counterfeit products by Defendants have further resulted in lost profits to Plaintiffs and have resulted in a windfall for Defendants.

68. Plaintiffs reserves the right to elect, at any time before final judgment is entered in this case, an award of statutory damages pursuant to 15 U.S.C. § 1117(c)(1) and/or (2).

69. Because of the willful nature of the counterfeiting, Plaintiffs are entitled to an award of statutory damages of up to $2,000,000 per mark infringed under 15 U.S.C. § 1117(c)(2).

70. In the alternative, and at a minimum, Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits, and treble damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1117(b).

71. Defendants' acts of direct and/or contributory counterfeiting have caused, and will continue to cause, Plaintiffs irreparable harm unless enjoined by this Court.

## THIRD CAUSE OF ACTION

### (**False Designation of Origin/Unfair Competition, 15 U.S.C. § 1125(a)**)

72. Plaintiffs incorporates by reference the allegations in paragraphs 1 through 71.

73. Each of the Defendants caused to enter into interstate commerce Counterfeit Goods that Defendants marketed through use of marks that is confusingly similar to the unregistered variants of the RooR Marks. Plaintiffs are informed and believe and thereon allege that unregistered variants of the RooR Marks have become associated in the minds of consumers with Plaintiffs and their respective RooR goods.

74. The marketing and sale of Defendants' water pipes (and/or related parts) as described above constitutes false designation of origin which is likely to cause confusion and mistake and to deceive consumers as to the source or origin of such goods or sponsorship or approval of such goods by Plaintiffs.

75. Plaintiffs are informed and believe and thereon allege that as a proximate result of Defendants' false designation of origin, each of the Defendants stand to make substantial sales and profits in amounts to be established according to proof.

76. Plaintiffs are informed and believe and thereon allege that as a proximate result of Defendants' false designation of the origin of their goods and services, Plaintiffs have been damaged and deprived of substantial sales of its goods and has been deprived of the value of its RooR Marks as commercial assets, in amounts to be established according to proof.

77. Plaintiffs are informed and believe and thereon allege that unless restrained by this Court, each of the Defendants will continue to designate falsely the origin of their goods, causing irreparable damage to Plaintiffs and engendering a multiplicity of lawsuits. Pecuniary compensation will not afford Plaintiffs adequate relief for its resulting damages. Further, Plaintiffs are informed and believe and thereon allege that in the absence of injunctive relief, customers are likely to continue being mistaken or deceived as to the true source, origin, sponsorship, and affiliation of Defendants' goods and services.

78. Plaintiffs are informed and believe and thereon allege that each of the Defendants' acts were committed, and continue to be committed, with actual notice of Plaintiffs' exclusive rights and with intent to cause confusion, to cause mistake, and/or to deceive, and to cause injury to the reputation and goodwill associated with Plaintiffs and genuine RooR products. Pursuant to 15 U.S.C. § 1117, Plaintiffs are therefore entitled to recover three times its actual damages or three times each of the Defendants' profits, whichever is greater, together with Plaintiffs attorneys' fees. In addition, pursuant to 15 U.S.C. § 1118, Plaintiffs are entitled to an order requiring destruction of all infringing materials in Defendants' possession.

## FOURTH CAUSE OF ACTION
(**Unfair Competition, California Business & Professions Code § 17200 *et seq.***)

79. Plaintiffs incorporates by reference the allegations in paragraphs 1 through 78.

80. Each of the Defendants' conduct as alleged herein constitutes unfair and

deceptive acts or practices in the course of a business, trade, or commerce, in violation of Cal. Bus. & Prof. Code §§ 17200 and 17500, *et seq.*

81. Plaintiffs are informed and believe and thereon allege that as a direct and proximate result of Defendants' wrongful conduct as described above, each of the Defendants have gained property and revenues properly belonging to Plaintiffs. Plaintiffs therefore seeks restitution of these amounts. Plaintiffs also seeks injunctive relief restraining Defendants, their officers, agents, and employees, and all persons acting in concert with them, from further engaging in acts of unfair competition and/or fraudulent business acts against Plaintiffs and their intellectual property.

## FIFTH CAUSE OF ACTION
### (**Common Law Unfair Competition**)

82. Plaintiffs incorporates by reference the allegations in paragraphs 1 through 81.

83. This cause of action arises under the common law.

84. Upon information and belief, Defendants will continue to infringe the registered and unregistered RooR Marks.

85. By the acts and activities of Defendants complained of herein, Defendants have been unjustly enriched.

86. As a direct and proximate result of the acts and activities of Defendants complained of herein, Sream has been damaged in an amount not yet ascertainable. When Plaintiffs have ascertained the full amount of damages, they will seek leave of court to amend this Complaint accordingly.

87. Plaintiffs are informed and believe, and based thereon allege, that Defendants, in doing the things herein alleged, acted willfully, maliciously, oppressively and despicably, with full knowledge of the adverse effect of their actions to Plaintiffs, and with willful and deliberate disregard for the consequences to Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief against Defendants, and each of them, as follows:

1. With regard to Plaintiffs' claim for counterfeiting:
    a. Defendants' profits and statutory damages of up to $ 2,000,000 per defendants under the ACPA;
    b. Defendants' profits, these profits being trebled;
    c. Attorney's fees;
    d. Costs of suit;
    e. Joint and several liability for officers, and directors for the knowing participation in the counterfeiting activities of the respective Defendants;
2. With regard to Plaintiffs' claim for trademark infringement:
    a. Defendants' profits pursuant to the Lanham Act;
    b. Damages sustained by the Plaintiffs for trademark infringement;
    c. Attorney's fees;
    d. Costs of suit;
3. For restitution in an amount to be proven at trial for unfair, fraudulent and illegal business practices under California Business & Professions Code § 17200;
4. Preliminarily and permanently enjoining Defendants and their agents, employees, officers, directors, owners, representatives, successor companies, related companies, and all persons acting in concern or participation with it, and each of them, from the import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment, licensing, development, display, delivery, marketing advertising or promotion of the counterfeit RooR product identified in the complaint and any other unauthorized RooR product, counterfeit, copy or colorful imitation thereof;
5. Pursuant to 15 U.S.C. § 1116(a), directing Defendants, and each of them, to file with the court and serve on Sream within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

6. For an order from the Court requiring that Defendants provide complete accountings and for equitable relief, including that Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution, including the amount of monies that should have been paid if Defendants had complied with their legal obligations, or as equity requires;

7. For an order from the Court that an asset freeze or constructive trust be imposed on all monies and profits in Defendants' possession, which rightfully belong to Plaintiffs;

8. Pursuant to 15 U.S.C. § 1118 requiring that Defendants and all others acting under Defendants' authority, at their cost, be required to deliver up to Plaintiffs for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing any of the RooR Marks;

9. For treble damages suffered by Plaintiffs as a result of the willful and intentional infringements engaged in by Defendants, under 15 U.S.C. § 1117(b);

10. For damages in an amount to be proven at trial for unjust enrichment;

11. For an award of exemplary and punitive damages in amount to be determined by the Court;

12. For Plaintiffs' reasonable attorney's fees;

13. For all costs of suit;

14. For such other and further relief as the Court may deem just and equitable.

Dated:  November 26, 2018                **NEXIO, PC**

By:   /s/ Imran F. Vakil/
   Imran F. Vakil
   *Attorneys for Plaintiffs, Sream, Inc.*
   *and RooR International BV*

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury of all issues so triable under the law.

Dated:  November 26, 2018              **NEXIO, PC**


                                       By:   /s/ Imran F. Vakil/
                                             Imran F. Vakil
                                             *Attorneys for Plaintiffs, Sream, Inc.*
                                             *and RooR International BV*

**COMPLAINT**